**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

TERRY DALE WILLIAMS                      CIVIL ACTION NO. 17-1291

VERSUS                                   JUDGE ELIZABETH E. FOOTE

RED RIVER BEVERAGE GROUP                 MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Pending before the Court is a motion for summary judgment [Record Document 49], filed by the Defendant, Red River Beverage Group ("Red River").  Red River's motion asks this Court to dismiss all claims of race and age discrimination brought by the Plaintiff, Terry Williams ("Williams").  Upon consideration of the briefs filed by the parties and for the reasons stated below, Red River's motion for summary judgment is GRANTED.

## BACKGROUND

Beginning in 2004, Williams, who is African American, worked for Red River as a salesman.  Record Documents 49-3, p. 1 & 54, p. 2.  Williams was fifty-one years of age at the time he joined the company.  Record Document 49-5, p. 1.  He was fired in 2016, as a result of what he claims to be race and age discrimination.

As a salesman for Red River, Williams sold the company's products to stores and ensured that those accounts had fresh product on their shelves.  Id. at p. 2.  Williams was required to follow the "Laws of the Industry," which were designed to ensure fresh product was made available to customers at all times.  Id. at p. 2 & 49-6, p. 20.  Salesmen could rotate products in their accounts to maintain freshness.  Id.

1

Williams's employment was governed by the Red River Beverage Group, LLC Company Policy, which was in effect throughout his tenure with Red River.   Record Document 49-5, p. 2.   The company policy stated that some bases for discipline or termination included insubordination, violation of the product out-of-date policy, and dereliction of duty.   Record Document 49-6, pp. 21 & 24.   Williams was written up by the company once in April of 2011 when a store called to complain that its shelves were empty because no product had been stocked.   Record Document 49-7, p. 7.   Williams did not commit any other disciplinary violations for nearly five years, until 2016.   During that year, he was disciplined for company violations on January 5, 2016, March 23, 2016, August 4, 2016, and November 17, 2016.   Record Document 49-7, pp. 8-16.   According to Red River, these violations formed the basis of his eventual discharge from the company.

The January incident stemmed from company management learning that one of Williams's accounts, a County Market store, had out-of-date product at the bottom of displays and in the store's back room.   In all, company management discovered seventy-five cases of out-of-date two-liters and twelve cases of half-pack half-liters, which cost Red River over $600.   The Employee Warning Notice issued for this incident states, "we cannot afford to have out of date available for the consumer to purchase.   I hope that Terry sees the severity of this and will work on improving his work ethic . . . .   Any further occurrences of this type of action will result in dismissal."   Id. at p. 9.   In March, company management found out of date product spread throughout two County Market locations.   Id. at pp. 11-12.   Based on this violation, Red River placed Williams on a performance

improvement plan, and he was warned that "further misconduct may result in additional discipline up to and including  . . . dismissal from the company." Id. at pp. 10, 12.

Then, in August, Williams was written up for insubordination, failure to follow directions, and failure to handle customer concerns. Record Document 49-7, p. 14. This resulted from a call Red River received from one of Williams's customers in which the customer complained about being out of stock of several items. Red River District Manager Jody Holloman ("Holloman") texted Williams three times over the course of several hours, yet Williams never responded. In the evening Holloman included George Page ("Page"), Director of Sales and Marketing, on the text thread. Page instructed Williams to take care of the issue first thing the following morning. Holloman's narrative on the report reflected that Williams "became argumentative and laid blame on others." Record Document 49-7, p. 14. The next morning, Williams spoke with the respective store manager and "blame[d] the office, drivers and everyone else" for the store being out of stock. Id. Williams then made arrangements to have the product delivered the following day, but upon questioning from the Red River office staff about whether Williams was expected to deliver the product himself, Williams reportedly told both the customer and the office personnel that he was not going to deliver despite being told to do so directly. Id. Upon learning this, Red River asked Williams to report to the office by 9:30 a.m. that day, but Williams did not appear until 11:10 a.m. Id. During a meeting on this issue, Williams told Page that he would not deliver the product himself, and then he allegedly became disrespectful, "combative and argumentative." Id. Red River initially placed Williams on a three-day unpaid suspension but it ultimately rescinded the suspension. Id.

Williams's final infraction in November of 2016 was, according to Human Resources Manager Angie Davis ("Davis"), the "proverbial straw that broke the camel's back."  Id. at 18.  On November 17, 2016, Williams was at one of his Super One accounts when he called Holloman to request display racks for the store.  Record Document 49-6, pp. 3-4.  Bobby Moore ("Moore"), an off-duty Red River salesman, was also at Super One and engaged in conversation with Williams. When Holloman's voicemail picked up, Williams failed to hang up to end the call.  Thus, the conversation that ensued between Williams and Moore was recorded by Holloman's voicemail.  In that conversation, Williams told Moore about another Red River salesman who had provided notice to the company that he would be leaving, however, he offered to stay on to deliver products to his customers. Williams remarked that he would not have made the same offer, as Red River is unappreciative of its employees.  This comment was made while Super One customers were passing by, but Williams submits that no Super One management was within earshot. Id. at p. 6.

Upon hearing the recording, Red River management issued Williams a disciplinary notice and then immediately terminated his employment. The violation warning stated that he had made slanderous comments about Red River during a conversation with a customer.  Record Document 49-7, p. 15.  The termination notice was also based upon "multiple warnings, write ups and evaluations."  Id. at p. 16.  Williams, who was sixty-three at the time of his termination, filed the instant suit alleging both racial and age discrimination in violation of Title VII and the Age Discrimination in Employment Act, respectively.  Record Documents 54, p. 1 & 29, p. 3.

## STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, (1986).  When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence.  See Celotex, 477 U.S. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.  Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).  However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review

the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. <u>Little</u>, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## <u>LAW AND ANALYSIS</u>

### I.    **Race Discrimination**

Title VII of the Civil Rights Act makes it an unlawful employment practice for an employer to refuse to hire or to discharge, or otherwise discriminate against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." <u>Alvarado v. Texas Rangers</u>, 492 F.3d 605, 611 (5th Cir. 2007) (quoting <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004)). Intentional discrimination can be established through either direct or circumstantial evidence. <u>Id.</u>

Direct evidence of discrimination "proves the existence of a fact without any inferences or presumptions.  Most often, direct evidence takes the form of a discriminatory statement directly connected to the plaintiff's discharge." McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447, 456 (5th Cir. 2019) (internal marks and citations omitted).

When a plaintiff has no direct evidence of discrimination, the courts are to apply the McDonnell Douglas burden-shifting framework.[1] See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097 (2000). To sustain a claim under this framework, a plaintiff first must establish a prima facie case of discrimination, which creates a presumption of intentional discrimination. Alvarado, 492 F.3d at 611. If a plaintiff is able to set forth a prima facie case of discrimination, the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, non-discriminatory reason. Reeves, 530 U.S. at 142.  If the employer provides a legitimate, non-discriminatory reason for its employment action, the presumption of discrimination disappears and "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Alvarado, 492 F.3d at 611.

This second showing, known as the "mixed-motive framework," is not part of the traditional McDonnell Douglas framework but is employed by the courts in this circuit in an identical manner.  Under the mixed-motive inquiry, if the plaintiff can demonstrate that

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)

the protected characteristic (here, race) was a motivating factor, then it "falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus.  If the employer fails to carry this burden, plaintiff prevails." Rachid v. Jack In The Box, 376 F.3d 305, 312 (5th Cir. 2004) (internal marks omitted).

      a.     Prima Facie Case

Generally, a plaintiff can establish a prima facie case of discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was treated less favorably than other similarly situated employees who were not members of the protected class, under nearly identical circumstances or he was replaced by someone outside of the protected group. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 & n.13, 93 S. Ct. 1817 (1973); Sanders v. Christwood, 970 F.3d 558, 561 (5th Cir. 2020); McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

In the instant case, Red River concedes that Williams is a member of a protected class (element one) and it agrees that he was terminated from his employment (element three).  It does, however, dispute that Williams was qualified for his position (element two).  Unfortunately, its motion does not address whether Williams was treated less favorably than other employees of a different class or whether he was replaced by someone outside of his own class (element four).  The Court will address elements two and four, in turn, taking Red River's silence into account.

As to element two, Williams's qualification for his position, Red River submits that "[t]he failure to adhere to Defendant's policy and admitted inability to perform his job duties rendered Plaintiff unqualified for his job and prevents him from establishing a *prima facie* case related to his termination."   Record Document 49-5, p. 9.   This argument, however, is foreclosed by Fifth Circuit precedence established in <u>Bienkowski v. American Airlines, Inc.</u>, 851 F.2d 1503 (5th Cir. 1988).

In <u>Bienkowski</u>, the defendant-employer alleged that the plaintiff was not qualified for his job, even though his performance had been satisfactory for ten years, "because his supervisors became unsatisfied with his work." <u>Id.</u> at 1505.   The defendant contended that to prove a prima facie case of discrimination, the plaintiff was required to demonstrate that he performed his job to the standards of his employer. <u>Id.</u> The Fifth Circuit disagreed, holding that "a plaintiff challenging his termination . . . can ordinarily establish a prima facie case of . . . discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action." <u>Id.</u> at 1506. Clarifying, the court stated this meant that the "plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." <u>Id.</u> at 1506 n.3.   It reasoned that inquiring into a plaintiff's qualifications at both the prima facie and pretext stages of the <u>McDonnell Douglas</u> analysis would create an "unnecessary redundancy." <u>Id.</u> at 1505.   Thus, per <u>Bienkowski</u>, if a plaintiff can successfully establish that he continued to possess the necessary qualifications to perform his job duties, he has satisfied that element of his prima facie case.   "The lines of battle may then be drawn over the employer's articulated

reason for its action and whether that reason is a pretext for . . . discrimination." Id. at 1506.

Accordingly, Red River's argument that Williams cannot establish a prima facie case of discriminatory discharge because he cannot prove he was qualified for his sales position is unavailing.  There is no evidence in the record that some event, such as suffering a physical disability or losing a necessary professional license, prevented Williams from working for Red River with the same experience, qualifications, and skillset he possessed when hired.  Because there is no dispute that Williams was actually qualified for the position of salesman when he was hired, the Court finds that Williams has satisfied this element of his prima facie case. See also Berquist v. Wash. Mut. Bank, 500 F.3d 344 (5th Cir. 2007) (explaining that because plaintiff possessed the same job qualifications when defendant fired him as when he was initially hired for that position, plaintiff "need not show that his performance met [defendant's] expectations to establish a prima facie case.").

The Court now turns to element four of the prima facie case.  The final prong of establishing a prima facie case of racial discrimination requires Williams to show that he was replaced by someone outside of his protected class or he was treated less favorably than a "similarly situated comparator of another race;" the latter is referred to as disparate treatment. Harris v. Drax Biomass Inc., 813 F. App'x 945, 948 (5th Cir. 2020).  Williams claims he meets this element in two ways:  (1) he was replaced by Barry Frost ("Frost"), a Caucasian employee and (2) he was fired because of the November conversation with

Moore, a Caucasian employee, while Moore was not fired or even disciplined.[2]  Red River does not dispute that Williams was replaced by Frost, who is Caucasian and thus outside of Williams's protected class.  As such, the Court finds that Williams has established that he was replaced by someone outside of his protected class, and hence, has set forth a prima facie case of racial discrimination.

However, to the extent Williams claims he has established element four through evidence of disparate treatment, the Court disagrees.  Williams has failed to set forth a prima facie case of disparate treatment regarding his allegation that he was treated less favorably than Moore, an allegedly similarly situated employee. Similarly situated employees are called "comparators" under Title VII jurisprudence. In identifying comparators, the Fifth Circuit has defined "similarly situated employees" narrowly.  "[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.' " Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009); Perez v. Tex. Dep't of Criminal Justice, Inst'l Div., 395 F.3d 206, 213 (5th Cir. 2004) ("[F]or employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.' ").  Nearly identical circumstances exist "where the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable

---

[2] In his declaration, Williams attests that Moore is Caucasian and that Frost is not African American.  Record Document 54-1, p. 10.  He declares that upon further investigation, he learned that Frost is Caucasian.  Id.  Because Red River does not dispute that Frost is Caucasian, the Court will assume this as a fact for purposes of this ruling.

violation histories." Lee, 574 F.3d at 260. And most importantly, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." Id.

Here, the sum total of Williams's argument on this point is:  "Bobby Moore is an example of someone who was not of Mr. Williams' race but received favorable treatment even though he was a part of the same conversation for which Mr. Williams was ultimately terminated."  Record Document 54, p. 20.  This single argument fails to carry Williams's burden. Without competent evidence from which the Court might compare the two employees, the Court cannot make a finding that this element has been satisfied.  Williams has provided no evidence of Moore's job duties or responsibilities, who supervised him, or critically, Moore's violation history with Red River. On this latter point, Red River's human resources manager, Davis, stated in her declaration that Moore did not share the same disciplinary history as Williams and that he did not have multiple write-ups within a singe year.

Of paramount importance here, Moore's alleged misconduct (participating in the November conversation with Williams) is not "nearly identical" to Williams's conduct, as required by the jurisprudence.  Indeed, Williams himself conceded during his deposition that Moore did not make any independent remarks about Red River but merely agreed with Williams's comments.  Record Document 49-6, p. 9.  See also Lee, 574 F.3d at 260 ("If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination

analysis."). To establish disparate treatment, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. Lee, 574 F.3d at 260. Williams has failed to identify a similarly situated comparator who received better treatment.

> b. Legitimate Nondiscriminatory Reason

Because Williams has established a prima facie case of discrimination by showing he was replaced by Frost, who is outside of his protected class, the burden shifts to Red River to articulate a legitimate, nondiscriminatory reason for its employment action. See Reeves, 530 U.S. at 142. In order to meet its burden, Red River "must provide both 'clear and reasonably specific reasons' for its actions." Okoye v. Univ. of Tex. Hous. Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001) (quoting Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981)). This is a burden of production, not persuasion, and "can involve no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742 (1993); see also Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013). Red River has satisfied this burden by asserting that Williams was discharged because of his repeated infractions and warnings, his insubordination, and his poor interactions with management. See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge."); Rochon v. Exxon Corp., 203 F.3d 827 (5th Cir. 1999) ("Violation of a work-rule is a legitimate, nondiscriminatory reason for termination.").

As Red River has satisfied its burden of production by articulating a legitimate, nondiscriminatory reason for firing Williams, "the inference of discrimination raised by the prima facie case drop[s] from this case." Shackelford v. Deloitte & Touche, 190 F.3d 398, 408 (5th Cir. 1999).  Hence, summary judgment is appropriate unless Williams can prove that Red River's reasons are pretextual or that his race was a motivating factor in his firing.

     c.     Pretext

To demonstrate pretext, a plaintiff must show that the employer's proffered reason for the termination is "false or 'unworthy of credence.' " Mackey v. Enventives, 802 F. App'x 835, 837 (5th Cir. 2020) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).  Pretext must be shown by a preponderance of the evidence. Tatum v. S. Co. Servs., 930 F.3d 709, 713 (5th Cir. 2019).  Williams must produce evidence that would "permit a jury to believe that [the] proffered reason for firing [him] was not its true reason but simply pretext for a racially discriminatory reason." Vaughn v. Woodforest Bank, 665 F.3d 632, 637 (5th Cir. 2011).  The question is whether Red River's explanation, "accurate or not, is the real reason for firing" Williams.  Id.  Put another way, would "a reasonable jury . . . believe [plaintiff's] version of events and conclude that [defendant's] stated reason for laying him off is false." Mackey, 802 F. App'x at 837.

In this case, Williams contends he was fired because he is African American.  There is no explanation or support for this belief aside from the fact that a white salesman replaced him.  Indeed, unlike many other cases alleging race discrimination, Williams has not identified a single racially offensive comment made by Red River, nor has he alleged any use of inflammatory or derogatory language at the company.  To be sure, Williams

admits no Red River employee and no one in management ever made a racial slur or racial comment about him. Record Document 49-6, p. 31.  He does not contend a racially insensitive culture existed within Red River or that one was harbored by Red River decision makers.  He does not assert that the environment within Red River was hostile to African American employees due to explicit or perceived racism.  Aside from his claim that Moore was treated more favorably than he was on one occasion, Williams does not allege that Red River treated African Americans poorly as compared to any other race.  He has not argued that as an African American salesman, company management placed expectations and duties on him that were not shared by the salesmen of other races.  Williams has neither alleged nor identified any pattern of hiring or firing that would disfavor African American employees or applicants.  Put simply, Williams's complaint, amended complaint, and opposition to summary judgment are entirely devoid of support for the alleged race discrimination.

The undisputed facts in the record establish that Williams committed several violations of company policy within a single year, that he was written up for those violations, and that he was warned that future conduct could result in discharge.  The undisputed facts show that Red River tried to work with Williams before resorting to firing him; it rescinded his probation in one instance and put him on a performance review plan in another instance.  While it may be true that Frost, a Caucasian salesman, was hired to replace Williams, Williams has not provided the Court with any information to suggest that this decision warrants a finding of discrimination.  There is no evidence in the record regarding Frost's credentials, experience, qualifications, or skills, and Williams has not

alleged that Frost was not qualified to perform the job.  Thus, the Court cannot conclude that Frost was hired simply because he is white.

What lies at the crux of this case is Williams's vehement disagreement with the job duties of various Red River employees, including the sales force.  Specifically, it is his belief that the duties and responsibilities of the sales staff are too onerous and unreasonable for certain store accounts, and as such, he should not have been expected to meet those demands.  He then makes the logical leap that because, in his estimation, other employees should have been required to fulfill those duties, then any disciplinary violations aimed at him as a salesman were unwarranted and unlawful.  As an initial matter, these arguments fail because they concern a business judgment this Court may not reconsider, namely the job duties for which the sales force is responsible.

However, as a legal matter, the Court would be remiss not to identify the fatal flaw in Williams's claim—he does not assert that the Red River policies, with which he fervently disagrees, were created or implemented in a discriminatory manner, or that they resulted in discrimination.  All salesmen, regardless of race, were governed by the exact same duties and expectations.

Williams's efforts to satisfy the pretext element of his case are unpersuasive. Williams does not dispute that he was repeatedly written up for violations of company policy, and he concedes that he received each of the Red River warnings discussed above. He contends, however, that if the jury believes that the allegations in the warning notices were not true, then the jury may conclude the notices were simply a pretext for discrimination.  In this same vein, Williams asserts that there are genuine issues of

material fact as to whether he adhered to company policy, whether he made slanderous remarks on the November recording, whether those statements were made in front of a customer, and/or whether he was actually combative during encounters with management, as alleged.  But those are not the issues before the Court.  The question before this Court is whether Williams's discharge was based upon racial discrimination. More precisely, the Court's inquiry at this stage is whether the write-ups were simply pretext for discrimination.   Though Williams asserts that a jury determination that any of the facts underlying those warning notices were not true means that he has established pretext, the Court disagrees.

As the Fifth Circuit has explained, "a plaintiff cannot prove that an employer's proffered reason is pretextual merely by disputing the correctness of the employer's decision." Burton v. Tex. Dep't of Criminal Justice, 584 F. App'x 256, 257 (5th Cir. 2014) (citations omitted).  Indeed, when conducting a pretext analysis, "the issue is not the truth or falsity of the allegations [against the employee], but whether the employer reasonably believed the . . . allegation and acted on it in good faith." Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 379 (5th Cir. 2010).  To be sure, courts "do not engage in second-guessing of an employer's business decisions. Title VII does not require employers to make correct decisions, only nondiscriminatory decisions." Burton, 584 F. App'x at 258 (internal citations and marks omitted).  Even if Williams did produce evidence that disputed some facts set forth in the warning notices, the Fifth Circuit has stated that "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant

17

was not truly motivated by its proffered justification." Little v. Republic Ref. Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991); see also Jackson, 602 F.3d at 379 ("Jackson's assertion of innocence alone does not create a factual issue as to the falsity of Cal-Western's proffered reason for terminating him."). Therefore, a jury disbelieving the allegations in the warning notices is insufficient, standing alone. See Collier v. Dall. Cty. Hosp. Dist., 827 F. App'x 373 (5th Cir. 2020) (explaining that though a plaintiff "may quarrel with the specific details of these events," he still must present evidence of pretext). The jury must have a legally sufficient reason to infer racial discrimination, and it is that link which is absent in this case.

Simply put, Williams's only evidence of pretext is his belief that Red River's stated reason for firing him is pretext.[3] A plaintiff's beliefs are not competent summary judgment evidence, and the employer is entitled to judgment as a matter of law if the record "conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." Chapple v. Tex. Health and Human Servs. Comm'n, 789 F. App'x 985, 990 (5th Cir. 2019) (quoting Reeves, 530 U.S. at 148); see also Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999) ("a subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief." (internal marks omitted)). Here, based on the undisputed record, a reasonable jury would not conclude that Red River's stated reason for firing Williams was false or unworthy of credence.

---

[3] To the extent Williams intended to pursue a disparate treatment theory as a method of proving pretext, that falls short for the reasons set forth earlier in this opinion. As discussed above, Williams has not established that Moore is a proper comparator. Thus, he cannot establish pretext merely by showing that Moore was not fired.

d.    Mixed Motive

Even when a plaintiff fails to show that the defendant's reason for terminating him was pretext for discrimination, he can still survive summary judgment if he can demonstrate that his race was a motivating factor in the employment decision.  Here, Williams has made no discernible effort to set forth a mixed motive theory of his case.  In any event, this claim would fail for the same reasons set forth above.  That is, the undisputed facts show that Williams's termination was based upon his repeated violations of company policy and not upon his race.  Williams has failed to present *any* evidence that his race played a role in the decision to fire him.  Rather, at most, Williams has shown that Red River's decision was plausibly motivated by what it perceived as a disagreeable and noncompliant employee.  Nonetheless, as long as a protected class or characteristic is not at issue, personality conflicts and interpersonal clashes are not shielded by Title VII.  Indeed, "rightly or wrongly, the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Eyob v. Mitsubishi Caterpillar Forklift Am., Inc., 745 F. App'x 209, 214–15 (5th Cir. 2018), as revised (Aug. 10, 2018) (internal marks omitted).   Thus, the Court finds that a reasonable jury could not conclude that Williams's race was a motivating factor in Red River's decision to fire him.

e.    Conclusion on Race Discrimination

Williams has failed to carry his burden of showing that Red River's proffered reason for the termination of his employment was not true or that race was a motivating factor.

Accordingly, Red River's motion for summary judgment is GRANTED as to Williams's race discrimination claim.

## II.    Age Discrimination

Williams next argues he was fired based on his age.  The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA protects workers who are at least forty years old from age-based discrimination.  Id. at § 631(a).

As the Fifth Circuit explained in McMichael, in both direct and indirect evidence cases,  the plaintiff may point "to age-related comments made by a person in charge of firing" in order to show discrimination.  McMichael, 934 F.3d at 457.  However, "[i]n direct evidence cases, comments must meet a demanding standard because the plaintiff relies on them "to prove the entire case of discrimination."  Id. (citing Goudeau v. Nat'l Oilwell Varco, L.P., 793 F.3d 470, 475 (5th Cir. 2015)).   As such, the comments "must be more than stray remarks."  Id. (citing E.E.O.C. v. Tex. Instruments, 100 F.3d 1173, 1181 (5th Cir. 1996)).   Instead, the comment must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee."   Id. (internal marks omitted).  Thus, "for a comment to prove age discrimination it must be (1) age related, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at

issue. Id. (quoting Moss v. BMC Software, 610 F.3d 917, 929 (5th Cir. 2010)).  Age-related comments can still be considered in a discrimination case even if they were not made "in the direct context of the termination." Id. (quoting Palasota v. Haggar Clothing Co., 342 F.3d 569, 578 (5th Cir. 2003)).   However, overall, this is a stringent standard and if comments fall short of satisfying it, they cannot defeat summary judgment. See id.; see also Jackson, 602 F.3d at 380 ("Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." (citations omitted)).

In the instant case, Williams has identified only one age-related comment made by anyone at Red River.  The Court will examine this remark to determine whether it can be considered direct evidence of discrimination.  Williams alleges that in 2016, he commented that his back was stiff, and Page (his supervisor) allegedly stated, "Terry, you're just old." Record Document 49-6, p. 32.  Williams has identified no other remarks that were made regarding his age or the age of other Red River employees.

Although this statement occurred in the same year that Williams was fired and it was made by Page, who is someone with authority over the employment decision at issue, this statement cannot serve as direct evidence of discrimination.  First, Williams has failed to identify when during the 2016 year the comment was made; yet, the pleadings make it clear that it was not made in connection with his discharge from the company.  Thus, Williams has not alleged that Page's remark was proximate in time to his firing nor has he attempted to demonstrate that the remark was related to Red River's decision to terminate him.  Accordingly, the comment does not constitute direct evidence of discrimination.

When the plaintiff lacks direct evidence of age discrimination, he can employ the McDonnell Douglas burden shifting framework.  See Rachid, 376 F.3d at 312.  Once again, the plaintiff must first establish a prima facie case of discrimination. Then, the burden shifts to the defendant to produce evidence that the plaintiff was terminated for a nondiscriminatory reason. If the defendant satisfies this burden, the plaintiff must show the legitimate reason offered by the defendant was not its true reason, but was pretext for discrimination. Id. at 308 n.3.   "It is at this third stage that the plaintiff must demonstrate that age was the 'but-for' cause of the defendant's employment decision, notwithstanding the defendant's putative non-discriminatory reason for the decision." Dubea v. Sch. Bd. of Avoyelles Par., 546 F. App'x 357, 360 (5th Cir. 2013) (citing Reed v. Neopost USA, Inc., 701 F.3d 434, 439–40 (5th Cir. 2012)).  Thus, merely proving that age was a motivating factor in the employer's decision is not enough. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180, 129 S. Ct. 2343 (2009) (a "plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision"); see also Moss, 610 F.3d at 928 (explaining that, in Gross, "the Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases.").

a. Prima Facie Case

To prove a prima facie case of age discrimination, Williams must show that he was: (1) discharged; (2) qualified for the position; (3) within the protected age group at the time of the discharge; and (4) either (a) replaced by someone younger, (b) replaced by someone outside the protected class, or (c) otherwise discharged because of his age.

Rachid, 376 F.3d at 309.  As to element two, Red River once again argues that Williams was not qualified for his position.  The Court has already rejected this argument.  In light of Red River's silence on the remaining elements, the Court assumes arguendo that Williams has satisfied his prima facie burden at this stage.

b.      Legitimate Nondiscriminatory Reason

The Court next considers whether Red River has sufficiently articulated a legitimate nondiscriminatory reason for firing Williams.  For the reasons set forth above in the race discrimination analysis—namely, that Red River has asserted that Williams was discharged because of his repeated infractions, insubordination, and poor interactions with management—, the Court finds that Red River has met this burden.

c.      Pretext

Now, Williams must establish pretext.  To do so, he can show that "(1) a discriminatory reason more likely motivated the employer, (2) the employer's reason is unworthy of credence, or (3) he is clearly better qualified than the person selected for the position."  McMichael, 934 F.3d at 457 (internal citations and marks omitted).  Here, Williams has not established that Red River's justification is false or unworthy of belief for the same reasons identified in the race discrimination analysis.  Similarly, Williams has not claimed he was better qualified for the job than Frost, who replaced him.  Thus, Williams's only avenue to demonstrating pretext is by showing that Red River was motivated by discrimination and that, but for discrimination, it would not have fired him.

One method of establishing pretext is by using discriminatory statements to demonstrate that discrimination motivated the employer to make the challenged decision.

In a pretext analysis, "the discriminatory remarks are just one ingredient in the overall evidentiary mix." Goudeau, 793 F.3d at 475 (holding that discriminatory remarks are relevant at the pretext stage and a less "demanding test applies"). "[T]he plaintiff must show that the comments involve (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." McMichael, 934 F.3d at 457-58 (quoting Reed, 701 F.3d at 441 (internal marks omitted)). As the Fifth Circuit explained in McMichael,

> Courts typically only find a statement to be evidence of age discrimination in two situations. First, courts will find evidence of age discrimination where a statement references age in a derogatory or stereotypical way. See, e.g., Rachid, 376 F.3d at 315 (finding evidence of age discrimination where the employer told the plaintiff ". . . you're too old"). Second, courts will find evidence of age discrimination where the employer's statement shows a desire to replace older employees with younger ones. See, e.g., Palasota, 342 F.3d at 577–78 (finding sufficient evidence to sustain a jury verdict where the employer stated that the plaintiff's "sales techniques were out of the 'old school' of selling"; commented that "there was a 'graying of the sales force' " and the employer needed "to find a way to get through it;" and recommended severance packages for fourteen named employees, all of whom were specifically identified as over fifty years of age, to create "the flexibility to bring on some new players").

McMichael, 934 F.3d at 458.

Williams's assertion that Page's comment constitutes indirect evidence of discrimination falls short. Again, the Court has been given no indication when in 2016 Page made this comment. Williams has presented absolutely no argument to suggest that the comment was related to his ultimate termination. Thus, Williams's case lacks two critical components: temporal proximity and relation or connectivity between the comment and the decision. The jurisprudence is clear that "sporadic" comments "untethered to

specific speakers or times" do not show a genuine dispute of material fact as to the ultimate issue, which is whether the employer discriminated against the employee. <u>Reed</u>, 701 F.3d at 442 (insufficient evidence where plaintiff claimed that co-workers called him "old man," "old fart," "pops," and "grandpa," but he could not identify the speakers or when the comments were allegedly made, he never reported the comments to management, and his alleged harassers had no authority over his termination); <u>see also</u> <u>Kelly v. Costco Wholesale Corp.</u>, 632 F. App'x 779, 783 (5th Cir. 2015) (comment by manager that he would hire "young kids" if plaintiff could not do his job failed to prove discrimination); <u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 153 (5th Cir. 1995) (manager's comments to plaintiff's fifty-one-year-old co-worker that co-worker was "getting old" and "losing her memory" were too remote and vague to be probative of age discrimination against fifty-three-year-old plaintiff); <u>Waggoner v. City of Garland, Tex.</u>, 987 F.2d 1160, 1166 (5th Cir. 1993) (stray remarks like "a younger person could do faster work" or calling someone an "old fart" are insufficient to establish discriminatory animus); <u>Turner v. N. Am. Rubber, Inc.</u>, 979 F.2d 55, 59 (5th Cir. 1992) (age-related comments that are vague and remote in time, such as supervisor's comment that he would send "three young tigers" to assist older employee, constitute stray remarks that fail to establish discrimination).  In other words, "a comment is not evidence of discrimination if it is the sole proof of pretext, or if it is not made in temporal proximity to the adverse employment decision." <u>Cervantez v. KMGP Servs. Co. Inc.</u>, 349 F. App'x 4, 11 (5th Cir. 2009) (because stray remark was the only evidence of pretext, it was not probative of discriminatory intent).

In the instant case, Williams has not identified any alleged discriminatory conduct aside from Page's one remark.  Galvanized solely with this one remark, Williams must at the very least come forward with evidence that Page's comment was made at or near the time of his discharge and/or that his discharge stemmed from or could be related back to Page's comment.  However, based upon the record in this case, the comment appears wholly unrelated to Williams's discharge and he has presented no evidence to show otherwise.  See Jackson, 602 F.3d at 380.

And, aside from Page's comment, Williams has produced no further evidence that he was discriminated against because of his age.  There is no suggestion that Red River systemically disfavored older workers or harbored animus against them.  Cf. Goudeau, 793 F.3d at 476 (plaintiff's supervisor's repeated remarks about "old people, calling plaintiff an "old fart," saying plaintiff wore "old man clothes" and his stated intention to fire two older workers, in connection with suspicious timing, constituted indirect evidence of discrimination; Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) (company's stated business plan to assemble a younger workforce, combined with age stereotyping remarks, such as stating that plaintiff was unable to adapt to changing environments, created an inference that plaintiff's age was a factor in his termination); Rachid, 376 F.3d at 313 (plaintiff's supervisor's repeated ageist comments established evidence of discrimination); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226-27 (5th Cir. 2000) (pretext established by evidence of age-related remarks, such as "old bitch," that were made by a younger manager who wielded enough informal power within the company to effectively become the decisionmaker).

Here, Red River hired Williams when he was fifty-four years old and he worked there until he was sixty-three.  Further, two of the three decisionmakers responsible for firing him were over the age of forty—Page was forty-eight, while Holloman was fifty. Record Document 49-3, p. 4.  Page's and Holloman's membership in the same protected class as Williams further undercuts any inference of age discrimination.  See Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996), abrogated on other grounds by Reeves, 530 U.S. at 134 (an inference that age discrimination is not the motive arose because fifty-eight-year-old plaintiff was fired by his sixty-year-old employer); Kelly, 632 F. App'x at 783 (manager who terminated plaintiff was three years older than plaintiff at the time, "bolster[ing] the inference that age discrimination was not the reason for his termination"). In addition, there is evidence that Moore, who allegedly participated in the same conversation as Williams and for which he was ultimately terminated, was sixty-four years old.  Yet, despite his age, Moore was not disciplined or fired by Red River, serving to further undermine Williams's allegations.

     e.    Conclusion as to Age Discrimination

Williams's sole evidence of pretext is one remark made by Page, who was in the same protected class as Williams at the time the remark was made.  Williams cannot connect this stray remark to the ultimate decision to fire him, nor can he establish that it was made close in time to the decision to terminate his employment.  He has not alleged that any other employee or member of management ever made another single comment regarding his age.  He cannot establish Red River harbored age-based animus or that it favored younger workers.  Williams's proof, consisting solely of Page's remark, falls

27

woefully short of proving pretext.  Ultimately, Williams cannot establish that but-for his age, Red River would not have fired him.  For these reasons, summary judgment is GRANTED as to Williams's claim of age discrimination in violation of the ADEA.

## III.   Conclusion

As set forth above, the Court finds that summary judgment is appropriate for both Williams's race discrimination claim and his age discrimination claim.  Therefore, Red River's motion for summary judgment is **GRANTED**, and Williams's claims against Red River are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** this 19th day of November, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE